**RUSSELL LAND COMPANY, a North Dakota partnership, Plaintiff and Appellee,**

v.

**MANDAN CHRYSLER–PLYMOUTH, INC., Defendant and Appellant.**

**Civ. No. 10954.**

Supreme Court of North Dakota.

Nov. 21, 1985.

Bruce Whittey, an officer of MCPI, told Russell that MCPI was having financial problems and was planning to close its business. On June 3, 1981, Bruce Whittey notified Russell in writing that MCPI was paying the rent through June and would surrender the leased premises on June 30, 1981. Twenty-six months of a five year lease term remained after June 30, 1981, with a monthly rent obligation of $1,475 plus utilities and taxes.

On July 31, 1981, MCPI and Russell executed a written "Release" by which Russell gave MCPI a "full and complete release with discharge ... of any and all obligation" under the lease, in consideration of MCPI's transfer to Russell of a vehicle valued at $5,000 which Russell had been leasing from MCPI.

Later, hearing rumors that MCPI had remaining assets, Russell made demand upon MCPI for information about its financial condition. Receiving none, Russell gave "Notice of Intent to Seek Rescission" of the "Release" and demanded payment of delinquent rent under the lease. This suit followed.

The trial court found:

"V.

"That during these conversations, Bruce Whittey, as the officer in charge of the Defendant's business, informed Plaintiff's partners that the Defendant was in poor financial shape, that there was only money for small creditors, and he conveyed the impression that the company was not solvent. Upon being so informed, Plaintiff's partner, Donald Russell, told Bruce Whittey that if this was the case, Defendant corporation should go into bankruptcy, to which Whittey responded that bankruptcy would only embarrass the people involved in Defendant corporation and not do any good for its creditors.

"VI

"That during these conversations, Defendant's agent, Bruce Whittey, did not

Bair, Brown & Kautzmann, Mandan, for defendant and appellant; argued by Malcolm H. Brown.

Kelsch, Kelsch, Ruff & Austin, Mandan, for plaintiff and appellee; argued by William C. Kelsch.

MESCHKE, Justice.

Mandan Chrysler-Plymouth, Inc., ("MCPI") appeals from a judgment (1) holding that false representations of insolvency justified rescission of Russell Land Company's written release of MCPI's lease obligation for rent of a building, and (2) awarding Russell a judgment of $32,601.32 for net rent due after certain mitigations. We affirm.

Russell leased a building to MCPI, which it used for an automobile dealership. In conversations during the spring of 1981,

reveal the true financial condition of the Defendant corporation, which financial condition, from Defendant's records as submitted at the trial, disclose that the corporation had a then net worth or equity, in excess of $72,000.

## "XI

"That Defendant, through statements made by its officer and agent, Bruce Whittey, conveyed to Plaintiff's partners, if not explicitly, at least by implication, that the Defendant was insolvent, or very close to being insolvent, and that Plaintiff could not look to any kind of further payment on its real estate lease. These statements were false and untrue.

## "XII

"That Plaintiff's partners believed these statements of Defendant's officer Whittey, relied upon them, and this induced Plaintiff to release Defendant from the future obligation of the real estate lease in exchange for Defendant conveying the vehicle to Plaintiff."

These findings were primarily based upon the testimony of Bruce Whittey, the officer of MCPI, and Donald Russell, a partner of the Russell Land Company, who had negotiated the "Release" for their respective companies and who were the only witnesses.

Donald Russell's testimony about the representations was fairly positive:

"When it appeared they were going to vacate the property, I asked them what their intentions were. At that time he didn't really know. He didn't know how they were going to be able to continue the lease. He felt that there was enough monies in the corporation to pay most of the small or unsecured creditors, and from that he basically said the company was bankrupt. In fact, he did say the company was bankrupt. And that was—those weren't conversations that were at the tailend. He said, 'We are going to turn the building back to you and the company is broke.'

\* \* \* \* \* \*

"A. I said, 'Then go bankrupt.'

"Q. Did he respond to you when you said that?

"A. He said: It would do no good, and it would just cause the company and themselves individually some personal embarrassment."

Donald Russell testified that he relied upon Whittey's representations of insolvency in entering into the "Release."

Bruce Whittey testified that MCPI had been "experiencing some cash flow problems," was "very concerned about the economic future of Chrysler Corporation," and was "concerned about the economic future of the area of the total economy." He testified that MCPI was not insolvent when it went out of business, but that Russell never requested any written financial statements. His testimony was as follows:

"Q. Now, in the first conversation you had with Don Russell, was there any discussion that the company was going to go bankrupt?

"A. We had no discussion as whether the company was going bankrupt or was in bankrupt state.

"Q. How about whether it was insolvent or not? Did he ever ask you?

"A. Not to my recollection.

"Q. Early on, I'm talking about.

"A. Not in our first conversation.

"Q. Did he tell you that they could put you in bankruptcy?

"A. Something to that effect, yes.

"Q. What was your reply?

"A. Our reply was we didn't want to go into bankruptcy. My experience being on the other side as a creditor, I felt that, at least the corporation felt, that bankruptcy would not be in the best interest of our credit (sic).

"Q. Did you feel that the corporation was bankrupt in the sense that it was insolvent?

"A. No, we were able to meet our obligations.

\*   \*   \*   \*   \*   \*

"Q. Did you ever represent to either Steve or Don Russell that the company was insolvent?

"A. No."

On this record, MCPI argues that it had no affirmative duty to disclose information to Russell and that Russell did not meet its burden of proving fraud (Findings V and XI) by clear, satisfactory and convincing evidence.

Although compromise settlement agreements are encouraged, *Muhlhauser v. Becker*, 76 N.D. 402, 37 N.W.2d 352 (1948), they are voidable for fraud, like all contracts. §§ 9–03–02, 9–03–03, 9–03–04 and 9–03–08, N.D.C.C. Fraud is a question of fact. § 9–03–10, N.D.C.C.; *Buehner v. Hoeven*, 228 N.W.2d 893, 903 (N.D.1975). Fraud must be proved by evidence that is clear and convincing to the finder of fact. *Verry v. Murphy*, 163 N.W.2d 721, 731 (N.D.1968).

A troubling aspect in this case is that the trial court considered a possible duty to disclose information, under *Adams v. Little Missouri Minerals Association*, 143 N.W.2d 659 (N.D.1966), and alternatively sought to support its decision with such a conclusion: "There was also fraud under Subsection 3 of § 9–03–08, in that there was a suppression of that which is true by one having knowledge of the true facts." This rule is clearly not apposite to the circumstances of this case where two businessmen were dealing with each other on equal footing and at arm's length. Russell could have made a request for disclosure of documentation of financial condition, but he did not.

However, even an experienced businessman can be duped. *Verry v. Murphy, supra*. The principal determination of the trial court was that there were false and untrue statements by Whittey which were believed and relied upon by Russell in entering into the "Release."

While the finding of fraud was drawn from the conflicting testimony of only two witnesses, believability is not a function of the number of witnesses or quantity of evidence presented. It is the quality of the proof that is meaningful. What matters upon appellate review is whether the trial court's basis for finding the existence of the disputed representations of insolvency is adequately disclosed in the record, considering the ability of the trial court to assess the credibility of the testimony.

The testimony about false representations was fairly positive. On this record, the trial court was entitled to disbelieve the denials for credibility reasons. The underlying circumstance of the disparately small value given for the "Release" of the large remaining obligation for rent, utilities and taxes inferentially reinforces the trial court's findings. The evidence of substantial remaining net worth is not disputed. From this evidence, the trial court concluded that the evidence "and the inferences arising therefrom, establishes the commission of fraud ... by clear and convincing evidence."

■ Our review of the trial court's findings is limited by Rule 52(a), N.D.R.Civ.P. While we may have viewed these facts differently if we had been the trier of fact, we cannot reverse the trial court's findings for that reason alone. We must give due regard to the trial court's opportunity to assess the credibility and observe the demeanor of the witnesses. Rule 52(a), N.D. R.Civ.P. We can reverse only if we are firmly convinced that a mistake has been made which makes the findings clearly erroneous.

■ We conclude that in this case the soundness of the judgment of the trial judge, who heard and observed the witnesses, should be respected. The record reflects an adequate basis for the findings. We are not convinced that a mistake was made in finding fraud.

The judgment is affirmed.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and LEVINE, JJ., concur.