MILLER ENTERPRISES, INC., a North Dakota Corporation, d/b/a Dog N' Cat Pet Center No. 9, Plaintiff and Appellee,

v.

DOG N' CAT PET CENTERS OF AMERICA, INC., Defendant and Appellant.

Civ. No. 890097.

Supreme Court of North Dakota.

Oct. 25, 1989.

Maury C. Thompson of Christensen & Thompson, Bismarck, for plaintiff and appellee.

Kathryn L. Dietz (argued) and Larry D. Orvik of Dietz & Little, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Dog N' Cat Pet Centers of America, Inc., appealed from a judgment of the district court of Burleigh County rescinding its franchise agreement with Jim Miller and his corporation, Miller Enterprises, Inc., on the basis of fraud. We affirm.

Dog N' Cat is a Colorado corporation with its principal place of business in Denver. In 1977, a former North Dakota resident named Steve Hintgen opened the first Dog N' Cat pet store in Colorado Springs, Colorado. Hintgen's business subsequently grew so that by 1985 he owned and operated five stores in the Colorado area. Encouraged by the growth of his pet-store business, Hintgen incorporated Dog N' Cat in early 1985 with the intention of selling franchises. At the time of its incorporation Dog N' Cat was a relatively small corporation operated by Hintgen, a shareholder named Michael Bernstone, and a few assistants including Jerri Raetz.

When Dog N' Cat became licensed to sell franchises, Hintgen contacted Don Miller, a Grand Forks, North Dakota, resident who had employed Hintgen in his retail grocery business when Hintgen was living in North Dakota. Hintgen told Don Miller he thought Columbia Mall in Grand Forks would be an ideal location for a Dog N' Cat franchise. Don Miller told his son, Tom, about Hintgen's proposal. Eventually, Tom Miller entered into a franchise agreement with Hintgen to operate a Dog N' Cat franchise in Columbia Mall. Don Miller also placed Hintgen in contact with his brother, Jim Miller, who was residing in Bismarck, North Dakota.

During May of 1985, Hintgen and Jim Miller began discussing the possibility of opening a Dog N' Cat franchise in Bismarck. Jim Miller had no previous experience or training in the pet business. Hintgen was aware of this, and was also aware that Miller was relying on Dog N' Cat to provide him with the necessary training to operate a pet store. In July of 1985, Jim Miller and Dog N' Cat entered into a written agreement in which Dog N' Cat granted Miller a franchise to operate a pet store in Bismarck. Hintgen's separate agreements with Tom Miller and Jim Miller constituted the first two sales of Dog N' Cat franchises.

Jim Miller, in return for his Dog N' Cat franchise, agreed to pay a franchise fee of

$18,500 and royalty payments calculated on a percentage of his monthly gross receipts. The franchise agreement also contained two key provisions. The first provision required the franchisor, Dog N' Cat, to provide a specific, two-week formal training program to its franchisees prior to the opening of a franchise business.[1] The second provision required the franchisor to provide the franchisee with reasonable operating assistance, including answering telephone and written inquiries.

After the execution of the franchise agreement, Hintgen negotiated a lease for Jim Miller at the Kirkwood Mall in Bismarck. Dog N' Cat also provided assistance to Miller by acquiring architectural drawings, supervising contractors, and ordering merchandise. Jim Miller's store was scheduled to open on the day after Thanksgiving in November of 1985.

Prior to the date set for his opening, Jim Miller traveled to Grand Forks to receive some initial training at Tom Miller's store in Columbia Mall. Hintgen sent his assistant, Jerri Raetz, to Grand Forks to supervise the training. Raetz spent half an hour reading from a lengthy training manual supplied by Dog N' Cat to Jim and Tom Miller. The rest of the two-day session was spent stocking Tom Miller's shelves and readying the store for his opening, which had been delayed due to construction.

Jim Miller's next opportunity for training occurred a week prior to the opening of his store in Kirkwood Plaza when Hintgen traveled to Bismarck to render some pre-opening assistance. Despite the fact that Jim Miller was in possession of the Dog N' Cat training manual, Hintgen spent no time going over it with Miller. During the week, Hintgen and Jim Miller helped the contractors finish the store's construction, set up shelves and fixtures, and stocked the shelves with merchandise. Hintgen also aided Miller with employee interviews, and worked with him regarding advertising. Hintgen left Bismarck prior to Miller's opening, but sent his assistant, Jerri Raetz, to Bismarck to be with Miller during the opening.

Jim Miller's store opening was far from smooth. During Miller's initial day of business a number of tanks of fish died, two dogs died while others had contracted parvo virus, and various birds and hamsters died from shipping diseases. In addition to receiving a number of complaints from customers, Miller's store gave refunds to individuals who had bought stressed fish, and paid veterinarian bills of persons who purchased sick dogs.

Subsequent to his store opening, many of Jim Miller's problems began to fade due in a large part to advice and training supplied by various pet-supply salesmen and distributors who had contacted Miller's store. Although Hintgen had given Jim Miller a Dog N' Cat telephone number in Colorado to contact when problems arose, Miller and his employees were often unable to reach anyone at Dog N' Cat when they used the number. Furthermore, messages left on Dog N' Cat's answering machine were not always returned.

In January of 1986, nearly two months after his store opening, Jim Miller attended a five-day training conference in Colorado Springs sponsored by Dog N' Cat. The conference involved a number of individuals from various pet-supply businesses who conveyed information to the participants on their companies' products and supplies.

---

1. Paragraph 8 of the franchise agreement provided in relevant part:

"FRANCHISE TRAINING

"The FRANCHISOR shall provide a formal training program for the FRANCHISEE and his designated manager or managers, at a location chosen by the FRANCHISOR at no charge for the initial two week (6 days per week) training program. The FRANCHISEE and his designated manager(s) are required to attend and successfully complete the training program provided by the FRANCHISOR prior to opening the Franchise Business. Training will be provided for up to three (3) FRANCHISEE representatives simultaneously. Training will be provided within six (6) weeks within signing of the Franchise Agreement and approval of the lease. Successful completion of the training program herein provided shall be indicated by the FRANCHISEE and his designated manager receiving a Certification of Training. The FRANCHISOR shall have complete discretion over the granting of the Certification of Training ..."

An advertising executive also gave a presentation on methods of advertising. At the completion of the conference, Dog N' Cat awarded Jim Miller a certificate of training indicating completion of Dog N' Cat's training program.

In late 1986, Jim Miller began to disassociate his pet store from Dog N' Cat.[2] Miller stopped making his monthly royalty payments to Dog N' Cat, and also refused to pay $8,500 of the original franchise fee which was still outstanding. On March 5, 1987, Dog N' Cat sent a letter to Miller complaining about his failure to abide by the franchise agreement. Shortly thereafter, Miller commenced this action seeking to declare the franchise agreement null and void on the basis of fraud.

Dog N' Cat moved for a partial summary judgment or partial judgment on the pleadings contending that Miller failed to allege fraud with particularity in his complaint. Moreover, in moving for summary judgment, Dog N' Cat attached to its brief a portion of the deposition of Jim Miller. Dog N' Cat contended that the excerpt showed no factual basis for an action for fraud. Miller opposed Dog N' Cat's motion and the trial court entered an order denying Dog N' Cat's motion for summary judgment.

After a bench trial, the trial court issued an oral memorandum opinion in which it found that Dog N' Cat had committed actual fraud as defined under Section 9–03–08(4), N.D.C.C.[3] Specifically, the trial court entered findings which demonstrated that Dog N' Cat made contractual promises of training and assistance without an intent to perform them. The trial court ordered that the franchise agreement be terminated with neither of the parties having any further rights or obligations thereunder. A judgment was entered and Dog N' Cat filed a timely notice of appeal to this court.

Dog N' Cat raises two issues on appeal: Dog N' Cat contends that the trial court erred in denying its motion for summary judgment or judgment on the pleadings; Dog N' Cat also argues that the trial court clearly erred in finding actual fraud.

■■■ Under Rule 56, N.D.R.Civ.P., a summary judgment should be granted only if it appears that there are no genuine issues of material fact or any conflicting inferences which may be drawn from those facts.[4] See Rule 56(c), N.D.R.Civ.P.; *Production Credit Ass'n of Minot v. Klein*, 385 N.W.2d 485 (N.D.1986); *Poyzer v. Amenia Seed and Grain Co.*, 381 N.W.2d 192 (N.D.1986). The party moving for a summary judgment has the burden to demonstrate clearly that there is no genuine issue of material fact. *Binstock v. Tschider*, 374 N.W.2d 81 (N.D.1985); *Latendresse v. Latendresse*, 294 N.W.2d 742 (N.D.1980). In considering a motion for summary judgment the court may examine the pleadings, depositions, admissions, affidavits, interrogatories, and inferences to be drawn therefrom to determine whether summary judgment is appropriate. *Everett Drill. Vent. v. Knutson Flying Serv.*,

---

**2.** On the advice of his attorney, Jim Miller terminated his relationship with Dog N' Cat. Miller removed the Dog N' Cat logo from his store, and changed the name of his business to Dakota Pet Center.

**3.** Section 9–03–08, N.D.C.C., provides:

"Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

"1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

"2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though he believes it to be true;

"3. The suppression of that which is true by one having knowledge or belief of the fact;

"4. A promise made without any intention of performing it; or

"5. Any other act fitted to deceive."

**4.** When a motion is made for a judgment on the pleadings, and matters outside the pleadings are presented to the court, the motion is treated as one for summary judgment and is disposed of as provided in Rule 56, N.D.R.Civ.P. See Rule 12(c), N.D.R.Civ.P. Thus, because Dog N' Cat's motion for a summary judgment or judgment on the pleadings was supported by excerpts from Jim Miller's deposition, we consider the motion in light of the principles of Rule 56, N.D.R.Civ.P.

338 N.W.2d 662 (N.D.1983); *First Nat. Bank of Hettinger v. Clark,* 332 N.W.2d 264 (N.D.1983). In doing so, the court must view the evidence in a light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. See *Stokka v. Cass Cty. Elec. Co-op., Inc.,* 373 N.W.2d 911 (N.D.1985); *Everett Drill. Vent. v. Knutson Flying Serv., supra.*

Dog N' Cat first contends that because Miller did not allege fraud with particularity in his complaint, the trial court erred in failing to grant its summary-judgment motion. Paragraph 6 of Miller's complaint stated:

> "That there was misrepresentation and fraud in the inducement by the Defendant in getting the Plaintiff to sign said agreement. That had the Plaintiff been fully advised as to the actual services and assistance which would be provided by the Defendant, the Plaintiff would not have entered into the agreement."

Paragraphs 7 and 8 of the complaint further detailed the lack of operating assistance and the lack of formal training given to Miller.

■ In an averment of fraud, the circumstances constituting fraud must be stated with particularity. See Rule 9(b), N.D.R.Civ.P.; *Krueger v. St. Joseph's Hospital,* 305 N.W.2d 18 (N.D.1981). See generally 2A J. Moore, *Moore's Federal Practice* ¶ 9.03[1] (2d ed.1989). No particular form or language is required in alleging fraud so long as the elements constituting fraud may be found from reading the whole pleading. See *Krueger v. St. Joseph's Hospital, supra;* 37 C.J.S. *Fraud* § 81 (1943). However, when the plaintiff makes an allegation of fraud the defendant must receive enough information to prepare a response and defense, and the plaintiff must apprise the defendant fairly of the charge. See 2A J. Moore, *Moore's Federal Practice, supra.* See also *Deutsch v. Flannery,* 823 F.2d 1361 (9th Cir.1987) [pleading satisfies particularity requirement for fraud if it identifies circumstances constituting fraud so that the defendant

can prepare an adequate answer]; *Bosse v. Crowell Collier and MacMillan,* 565 F.2d 602 (9th Cir.1977) [circumstances constituting fraud need only be so identified that the defendant can prepare an adequate answer from the allegations]; *Zatkin v. Primuth,* 551 F.Supp. 39 (S.D.Cal.1982) [pleading of fraud is sufficient if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer]. After examining the pleading as a whole, we believe that the trial court did not err in denying Dog N' Cat's summary-judgment motion. Miller's complaint alleged fraud by Dog N' Cat and stated that "had the Plaintiff been fully advised as to the actual services and assistance which would be provided" he would not have entered into the franchise contract. The next two paragraphs in the complaint allege the lack of operating assistance and formal training by Dog N' Cat. Dog N' Cat was apprised fairly of the charge of fraud against it.

■ Moreover, in moving for summary judgment Dog N' Cat also contended that there was no factual basis for a claim of fraud. Dog N' Cat submitted portions of Jim Miller's deposition to support its position that there was no genuine issue of fraud. Jim Miller countered Dog N' Cat's motion by submitting excerpts of his interrogatory answers and deposition along with a brief in opposition to the motion for summary judgment. These excerpts stated that Dog N' Cat misrepresented the training and assistance it would give to Miller, and that Jim Miller did not in fact receive the training and assistance which was represented to him. Evaluating the evidence presented to the trial court by both parties in a light most favorable to the party opposing the motion, we conclude that the trial court did not err in denying Dog N' Cat's motion for summary judgment. The trial court believed the issue of whether or not Dog N' Cat misrepresented the training and assistance it would provide Miller under the franchise agreement should be determined at trial. We affirm the trial court's denial of Dog N' Cat's motion for summary judgment.

Dog N' Cat's second argument is that the trial court clearly erred in finding actual fraud under Section 9–03–08(4), N.D.C.C. It contends that the evidence did not support the findings by the trial court that Dog N' Cat made contractual promises without an intent to perform them.

Our review of the trial court's findings is limited by the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. See *Russell Land Co. v. Mandan Chrysler–Plymouth*, 377 N.W.2d 549 (N.D.1985). On appeal it is not the function of this court to substitute its judgment for that of the trial court, and the trial court's findings cannot be reversed merely because this court may have viewed the facts differently if we had been the trier of fact. See *Russell Land Co. v. Mandan Chrysler–Plymouth, supra; In Interest of Kupperion*, 331 N.W.2d 22 (N.D.1983); *Rolfstad v. Hanson*, 221 N.W.2d 734 (N.D.1974); *Kee v. Redlin*, 203 N.W.2d 423 (N.D.1972). Furthermore, in reviewing the findings we give due regard to the trial court's opportunity to assess the credibility and observe the demeanor of the witnesses. See Rule 52(a), N.D.R.Civ.P.; *Russell Land Co. v. Mandan Chrysler–Plymouth, supra; In Interest of Kupperion, supra; Tower City Grain Co. v. Richman*, 232 N.W.2d 61 (N.D.1975). A finding is not clearly erroneous under Rule 52(a), N.D.R.Civ.P., unless it has no support in the evidence or, although there may be some supporting evidence, the reviewing court is left with a definite and firm conviction that a mistake has been made. See *Great Plains Supply Co. v. Erickson*, 398 N.W.2d 732 (N.D. 1986); *Bashus v. Bashus*, 393 N.W.2d 748 (N.D.1986); *Graber v. Engstrom*, 384 N.W.2d 307 (N.D.1986); *Russell Land Co. v. Mandan Chrysler–Plymouth, supra*.

The trial court made a number of findings of fact in its oral memorandum opinion. In rendering its decision the trial court found that Jim Miller had no prior experience in the pet business, and that he was depending on Dog N' Cat to provide him with the necessary training. It also determined that the franchise agreement called for specific, formal training which was to consist of a two-week, six-days-per-week, training program to be provided prior to Jim Miller's store opening. The trial court further found that Hintgen had no prior experience in franchising, and that he did not have the necessary staff and ability to provide the training and operating support called for in the agreement. It also determined that Jim Miller received "one-half to one hour" training in Grand Forks, and that the "training" given to Miller in Denver after his store had opened was actually a "seminar" consisting of pet suppliers providing product information to store owners. The trial court concluded that the training and support provisions in the franchise agreement were made without an intention to perform them and thus constituted actual fraud under Section 9–03–08(4), N.D.C.C.

Dog N' Cat's main contention is that the findings do not demonstrate any "intention" to defraud. In other words, it claims the evidence failed to support findings that the promises were made without an "intention" of performing them. This court has often stated that actual fraud cannot exist unless an intent to deceive is present. See generally *Zuraff v. Empire Fire & Marine Ins. Co.*, 252 N.W.2d 302 (N.D.1977); *Verry v. Murphy*, 163 N.W.2d 721 (N.D.1969); *City of Granville v. Kovash, Incorporated*, 118 N.W.2d 354 (N.D. 1962). However, intent to defraud is difficult to prove and can be proved circumstantially. See *In re Valeu*, 57 B.R. 488 (Bkrtcy.D.N.D.1986) [fraudulent intent is often incapable of direct proof and may be inferred from the circumstances]; *Florenzano v. Olson*, 387 N.W.2d 168 (Minn.1986) [fraudulent intent is rarely proved directly, but is normally established through circumstantial evidence]; *Wilden Clinic, Inc. v. City of Des Moines*, 229 N.W.2d 286 (Iowa 1975) [in fraud cases, circumstantial evidence may be utilized to prove intent to deceive]. In discussing this matter, 37 Am. Jur.2d *Fraud and Deceit* § 446 (1968) states:

"Ordinarily, intent to deceive is not susceptible of direct proof, but can be established only by circumstantial evi-

dence. As heretofore stated, fraud may be inferred from the circumstances.... In these cases, proof of scienter is not dispensed with. It is simply a question of the method and quantum of proof."

In the instant case the trial court found the requisite intent to not perform the contract from the circumstantial evidence presented. The circumstances demonstrated that Jim Miller had no prior experience in the pet business, and that Hintgen knew Miller was depending on Dog N' Cat for the necessary training. The evidence also reflected that Dog N' Cat, at the time of the franchise agreement, lacked the staff and resources to provide the training called for by the agreement.

We conclude that the judgment of the trial judge, who heard and observed the witnesses and evidence, should be respected. The record reflects adequate evidence to support the findings that Dog N' Cat made promises of training and operating support without an intention of performing them. We are not convinced that a mistake was made in finding fraud. The judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.