Donald **RICHMOND**, Plaintiff and Appellant,

v.

Thomas **HANEY**; City of Bismarck, a municipal corporation; Burleigh County, a governmental organization, Defendants and Appellees.

Civ. No. 910298.

Supreme Court of North Dakota.

Feb. 6, 1992.

Donald Richmond, pro se.

Kapsner and Kapsner, Bismarck, for defendant and appellee Burleigh County; argued by John C. Kapsner.

Charles C. Whitman (argued), City Atty., Bismarck, for defendants and appellees Thomas Haney and City of Bismarck.

ERICKSTAD, Chief Justice.

Donald Richmond appeals from the judgment of the District Court for Burleigh County, dismissing his complaint against Thomas Haney, the City of Bismarck, and Burleigh County. We affirm.

On March 29, 1990, Richmond, acting pro se, brought this action against Thomas Haney, the City of Bismarck, and Burleigh County, alleging, among other things, a claim for malicious prosecution. An amended complaint was filed on April 10, 1990, correcting a minor drafting error on Richmond's part. Haney and the City of Bismarck answered Richmond's complaint on April 12, 1990, denying liability and asserting as affirmative defenses that the complained of act was a discretionary act and accordingly immune from liability; that the complaint failed to state a claim upon which relief could be granted; and that the plaintiff had failed to follow a number of statutory pleading requirements. Burleigh County answered Richmond's complaint on April 11, 1990, and made an amended answer on April 12, 1990, denying liability and asserting as affirmative defenses that the complained of act was a discretionary act and accordingly immune from liability, and that the complaint failed to state a claim upon which relief could be granted. On April 18, 1990, the City of Bismarck and Haney moved to have that part of Richmond's complaint asking for punitive damages dismissed as not complying with the requirements of section 32–03.2–11, N.D.C.C.[1] Richmond

---

1. Section 32–03.2–11, N.D.C.C., reads:

   "*32–03.2–11. When court or jury may give exemplary damages.* In any action for the breach of an obligation not arising from contract, when the defendant has been guilty by clear and convincing evidence of oppression, fraud, or malice, actual or presumed, the court or jury, in addition to the actual dam-

resisted the motion and, subsequently, on April 30, 1990, moved to amend his complaint to comply with section 32–03.2–11, N.D.C.C. Without a memorandum opinion, the trial court denied Richmond's motion to amend his complaint to include a claim for punitive damages, and granted Haney and the City's motion to dismiss the prior claim for punitive damages in Richmond's initial complaint. On March 28, 1991, Richmond filed a note of issue and certificate of readiness. On April 25, 1991, Haney and the City moved to amend their answer to include an additional affirmative defense; namely, that of qualified immunity under common law. The trial court granted the motion of Haney and the City and the amended answer was filed on May 20, 1991. On July 10, 1991, Haney and the City filed a motion for summary judgment. On July 25, 1991, Burleigh County filed a motion for summary judgment. The trial court granted both motions and dismissed Richmond's complaint with prejudice concluding that probable cause existed for the prosecution against Richmond and that the Burleigh County State's Attorney's actions were immune from liability. This appeal followed.

The facts precipitating this action arose out of a fire in a mobile home owned by Richmond on December 10, 1987. The Bismarck Fire Department arrived at the scene approximately three minutes after a neighbor reported the fire. Richmond was at the mobile home at the time of the fire. Richmond told Captain Orne, one of the Bismarck firefighters on the scene, that he had been working on a faulty light fixture in the workshed, that after turning a fuse back in to its socket it blew, and that when he returned to the shed to see what was wrong he found that a fire had started.[2] Sherwin Nelson, a fire investigator for the Bismarck Fire Department, was called to the scene to conduct an investigation. After looking at the fire damage, Nelson concluded that it wasn't consistent with an electrical fire originating in the light fixture. Nelson subsequently had Detective Haney and Bob Holmberg assist him in further investigation. Their investigation revealed a "pour pattern" on the floor, some burning behind a board against the doorway as well as some burning underneath the doorway threshold. These and other facts led the investigators to believe that a flammable liquid had been used.

An investigation was conducted by Matthew Schwartz of SSR Engineers, Inc., apparently at the request of the insurance carrier, to determine whether or not the fire had an electrical source. Haney and Nelson accompanied Schwartz in his investigation and were given a copy of his final report which concluded that it was unlikely that the fire had an electrical origin.

Officer Haney later learned that Richmond had been in contact with the insurance carrier. These and other facts were eventually brought to the attention of Bruce Haskell of the Burleigh County States Attorney's Office. Haskell, upon discussing the case with Haney and reviewing the investigators' reports, concluded that probable cause existed to believe Richmond had committed the crime of arson. A criminal complaint alleging the charge of arson against Richmond was subsequently drafted and signed by Burleigh County Judge Riskedahl. At the request of Calvin Rolfson, Richmond's attorney in the case at that time, Richmond was apparently al-

ages, may give damages for the sake of example and by way of punishing the defendant. Upon commencement of the action, the complaint may not seek exemplary damages. After filing the suit, a party may make a motion to amend the pleadings to claim exemplary damages. The motion must allege an applicable legal basis for awarding exemplary damages and must be accompanied by one or more affidavits showing the factual basis for the claim. At the hearing on the motion, if the court finds prima facie evidence in support of the motion, the court shall grant the moving party permission to amend the plead-

ings to claim exemplary damages. For purposes of tolling the statute of limitations, pleadings amended under this section relate back to the time the action was commenced."

2. Although Richmond asserts that he does not know how the fire started and has never said otherwise, he has submitted no competent evidence which contradicts Captain Orne's statement that Richmond told him that he discovered the fire after a fuse blew while he was working on a light fixture.

lowed to appear on the charge without first being arrested. Prior to the probable cause hearing, Haskell moved to have the complaint dismissed. In his affidavit explaining his action he, in relevant part, said:

"9. ... on May 11, 1988, I filed a motion to dismiss the arson charge against Mr. Richmond. The motion to dismiss was based upon my conversation with a representative of Allstate Insurance Company. I was informed that a proof of loss form had been submitted to the company, but that the form was apparently unsigned and that no other action had been taken to pursue the claim. It was my belief at that time that the failure to pursue the insurance claim would make it difficult to prove that Donald Richmond set the fire for the purpose of collecting insurance proceeds, therefore dismissal was appropriate."

Initially, we note the standards regarding the granting of a motion for summary judgment. Under Rule 56, N.D.R.Civ.P., summary judgment is appropriate when, after viewing the evidence in a light most favorable to the party opposing the motion, there are no genuine issues of material fact, or any conflicting inferences which can be reasonably drawn from such facts. *Matter of Estate of Stanton*, 472 N.W.2d 741, 743 (N.D.1991); *Miller Enterprises v. Dog N' Cat Pet Centers*, 447 N.W.2d 639 (N.D.1989). Additionally, even when there are factual disputes, summary judgment is proper if the resolution of the factual disputes will not change the outcome. *Stensrud v. Mayville State College*, 368 N.W.2d 519, 521 (N.D.1985). Although the summary judgment movant has the burden of establishing the absence of any genuine issues of material fact, *Binstock v. Tschider*, 374 N.W.2d 81, 83 (N.D.1985), a party opposing the motion "may not rest upon the mere allegations or denials" of his or her pleadings. *See* N.D.R.Civ.P., Rule 56(e).[3] Rather, as we said in *Binstock*, quoting *First National Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D.1983):

"A party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, NDRCivP 56(e); *Spier v. Power Concrete, Inc.*, 304 N.W.2d 68 (N.D. 1981); and, if appropriate, drawing the court's attention to evidence in the record by setting out the page and line in depositions or other comparable document containing testimony or evidence raising a material factual issue, or from which the court may draw an inference creating a material factual issue.

"In summary judgment proceedings the trial court has no legal obligation, judicial duty, or responsibility to search the record for evidence opposing the motion for summary judgment. This principle and legal concept applies equally well, or more so, to appellate proceedings

---

**3.** Many of the facts Richmond recites in his brief and at oral argument do not meet the requirements of Rule 56(e), N.D.R.Civ.P., which reads:

"(e) *Form of affidavits—Further testimony— Defense required.* Supporting and opposing affidavits must be made *on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit must be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. If a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by*

*affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, must be entered against the adverse party.* [Emphasis added.]"

Thus, hearsay statements and assertions not supported by affidavit or other competent means cannot be considered. We will not apply this and other court rules differently merely because a party unlearned in the law is acting pro se. *Gottschald v. Gottschald*, 312 N.W.2d 705, 706 (N.D.1981).

Richmond has failed to refer specifically to those parts of the record contained in his appendix which support his factual assertions as required by Rule 28(e), N.D.R.App.P. Richmond has included in his appendix some material which was not submitted to the trial court and is not part of the record. Such material cannot be considered in this appeal.

involving an appeal from the granting of a summary judgment for the further reason that the appellate court, except for jurisdictional matters and taking judicial notice, generally considers only those issues raised in the trial court."

374 N.W.2d at 83–84.

Although Richmond's complaint is vague and difficult to understand, he does assert that the actions of Officer Haney and the actions of Bruce Haskell, the Burleigh County States Attorney who approved the criminal complaint against him, constituted a malicious prosecution. The City and the County were named as the respective employers of Haney and Haskell.

■ In order to maintain an action for malicious prosecution one must establish, at a minimum, the following elements:

"1. A criminal proceeding instituted or continued by the defendant against the plaintiff.

2. Termination of the proceeding in favor of the accused.

3. Absence of probable cause for the proceeding.

4. 'Malice,' or a primary purpose other than that of bringing an offender to justice."

Prosser and Keeton, *The Law of Torts*, 5th ed., p. 871 (1984); *Larson v. Baer*, 418 N.W.2d 282 (N.D.1988).[4] The crucial question we must decide in this case is whether or not probable cause existed.

■ When there has been a prior judicial determination of probable cause, such a finding usually constitutes prima facie evidence of probable cause in a subsequent malicious prosecution suit. *See Weisenberger v. Mueller*, 89 N.W.2d 559, 564 (N.D. 1958); *see also Watkins v. Spring Creek Colony*, 188 Mont. 467, 614 P.2d 508, 510 (1980); 54 C.J.S., *Malicious Prosecution*, section 32 (1987). Generally, to defeat such a determination, the acts or omissions of the defendant must have tainted the proceeding or the evidence considered in the proceeding. *See generally Wigger v. McKee*, 809 P.2d 999, 1005 (Colo.App. 1990).[5]

---

**4.** In this case, Richmond does not assert any basis for establishing the element of malice other than to recite the rule of law that, in some instances, malice can be inferred from the want of probable cause. However, it must be stressed that although malice can be inferred from the want of probable cause in some instances, establishing malice as a matter of fact is an essential prerequisite to maintaining a claim for malicious prosecution. Thus, although the inquiry as to the existence of probable cause in some respects parallels questions of negligence, an action for malicious prosecution cannot be based on mere negligence. *See generally Bahakel v. City of Birmingham*, 427 So.2d 143 (Ala.1983) (holding that a claim for "negligent prosecution" did not state a cognizable tort claim). As the Georgia Court of Appeals noted:

"The tort of malicious prosecution cannot be governed by the rules applicable to the tort of negligence. *See generally Stewart v. Williams*, 243 Ga. 580, 581, 255 S.E.2d 699 (1979), wherein the court held there is no tort of negligent false imprisonment. Instead of the elements of negligence, the law requires that one who alleges injury as the result of a prosecution must prove lack of probable cause, as well as malice. This is because '[m]alicious prosecution is an action which runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty.... It never has been regarded with any favor by the

courts, and it is hedged with restrictions which make it very difficult to maintain.' Prosser, *Handbook of the Law of Torts*, p. 841 (4th Ed.1979). *See also Price v. Cobb*, 63 Ga.App. 694, 11 S.E.2d 822 (1940)."

*Munford, Inc. v. Anglin*, 174 Ga.App. 290, 329 S.E.2d 526, 530 (1985); *But see* Annot., 99 A.L.R.3d at 1113.

In that light, we believe that Richmond's reliance on the rule of law that malice can be inferred from the want of probable cause is misplaced. It has been said that "[t]o accuse and prosecute a person for crime without probable cause is matter of such serious consequences that malice may be inferred therefrom, but not necessarily so. The rule is otherwise, however, with reference to an ordinary act of negligence, and, unless the injury complained of was intentional, or so reckless or wanton as to indicate bad faith, malice is not to be inferred therefrom." *Jenkins v. Gilligan*, 131 Iowa 176, 108 N.W. 237, 238 (1906).

**5.** We note that there appears to be a split of authority as to the type of proof necessary to overcome a prior judicial determination as to the existence of probable cause. *See* Annot., 68 A.L.R.2d at 1170. As the Montana Supreme Court, in *Watkins v. Spring Creek Colony*, noted:

"Some jurisdictions require the showing of fraud, perjury, or other undue means in obtaining the original determination that probable cause existed to overcome the effect of the

■ Whether or not probable cause exists depends on the honest and reasonable belief of the person instigating the prosecution. *See Weisenberger v. Mueller,* 89 N.W.2d 559, 563 (N.D.1958). Although the person instigating the prosecution need not believe in the guilt of the accused beyond a reasonable doubt, he or she must truly and reasonably believe that the accused has acted in a particular manner. *Id. See also* Prosser and Keeton, *The Law of Torts,* 5th ed., p. 876, (1984).

The facts and circumstances must be such as would warrant a belief of guilt in a reasonably cautious and prudent person. *See* 52 Am.Jur.2d *Malicious Prosecution* section 72 (1970). The facts warranting a reasonable belief of guilt, however, need not be from personal knowledge. *See* 52 Am.Jur.2d *Malicious Prosecution* section 53 (1970). It is sufficient if the person instigating the prosecution "as a reasonable and prudent man, ... had reasonable grounds to believe the plaintiff was guilty, and that in coming to such a conclusion, ... had information of such a character and obtained from such sources as men of ordinary care, prudence, and discretion would feel authorized to act upon in similar circumstances." *Id.*[6]

■ In determining the reasonableness of the accuser's belief as to the guilt of the accused, only those facts and circumstances as existed at the time the prosecution was commenced, are considered. *See* 54 C.J.S., *Malicious Prosecution,* section 28 (1987); *see also Cimino v. Rosen,* 193 Neb. 162, 225 N.W.2d 567, 569–570 (1975);

*Brumbaugh v. Frontier Refining Co.,* 173 Neb. 375, 113 N.W.2d 497 (1962).[7]

■ Whether or not there was probable cause to instigate a prosecution is a mixed question of law and fact. *Johnson v. Huhner,* 76 N.D. 13, 33 N.W.2d 268, 273 (1948). "It is for the jury to say what the facts are and it is for the court to say whether the found facts or the undisputed facts constitute probable cause." *Id. See also* 52 Am.Jur.2d, *Malicious Prosecution,* section 184 (1970). Thus, the court decides whether or not the facts would warrant a belief of guilt in a reasonably cautious and prudent person. However, "[t]he question of the existence of an essential belief on the part of the [defendant] is a question of fact." *Johnson v. Huhner,* 33 N.W.2d at 273; *see also* 52 Am.Jur.2d, *Malicious Prosecution,* section 185 (1970).

■ In this case, Richmond has failed to raise issues of material fact, the resolution of which would change the determination of whether or not a reasonably cautious and prudent person would have believed in Richmond's guilt at the time the prosecution was instigated, and he has failed to submit facts from which one could reasonably infer that Haney and Haskell did not truly believe that Richmond was guilty of the offense charged. For the most part, Richmond does not address the facts known or relied on by Haney and Haskell at the time the prosecution was instigated. The evidence as known to Haney and Haskell and as presented to Judge Riskedahl, among other things, included evidence of "pour patterns" and of a "short response

prima facie or presumptive evidence of probable cause established by the prior judicial determination of probable cause. Other jurisdictions only require a showing of lack of probable cause by a preponderance of the evidence to overcome the presumption of the existence of probable cause raised by a determination of probable cause in a prior proceeding." (Citations omitted.) *Watkins v. Spring Creek Colony,* 188 Mont. 467, 614 P.2d 508, 510 (1980). Given the overwhelming evidence of probable cause in this case, we need not choose one over the other.

6. We recognize that, in the process of a criminal investigation and prosecution, criminal investigators and prosecutors must often rely on infor-

mation and facts asserted by others. Such reliance is generally reasonable, absent evidence to the contrary. In this case, Richmond offered no evidence from which we could conclude that it was unreasonable for Haskell to accept the facts as asserted by Haney, or for Haney to accept the facts and opinions as asserted by Nelson, Schwartz, and others.

7. Both Richmond and the defendants have asserted facts not available or known at the commencement of the prosecution which might tend to bolster or weaken a finding of probable cause. None of these facts are relevant to a determination of whether or not probable cause existed for instigating the prosecution.

time"[8] indicating that an accelerant had been used; evidence that Richmond had contacted the insurance carrier; lack of evidence that other people had been at the mobile home at the time of the fire; evidence that the mobile home had recently been vacated and was being repaired or restored; and lack of evidence that the fire started in an accidental manner such as through an electrical short.

First, we note that Richmond has not submitted evidence which raises an issue as to whether or not the "pour patterns" existed, nor has he submitted evidence which raises a dispute as to whether or not "pour patterns" are reliable indicators that a fire was started intentionally with an accelerant. Rather, Richmond submitted some evidence which merely suggests that the fire may not have originated in a way the "pour patterns" otherwise suggest. In her deposition given three years after the fire, Marie Englehard, who formerly lived adjacent to the mobile home where the fire occurred, stated that she saw no fire on the floor of the mobile home except for burning pieces of ceiling which were falling.[9]

Assuming that Englehard's recollection is inconsistent with a fire originating in a manner as suggested by the "pour patterns," we note that officer Haney and the other investigators did not question Englehard and thus were not aware of this information at the time the charge of arson was initiated. The issue thus narrows to whether or not a reasonably cautious and prudent person would discount the "pour patterns" and other evidence until he or she had talked to people who may have witnessed the fire in its early stages. Had they not had the evidence of the scene they might likely have conducted a neighborhood investigation, but the fact that they did not do so under these circumstances cannot be used to attack the finding of probable cause.

In determining probable cause, a court may take into account the training and expertise of law enforcement personnel. *See generally State v. Mische,* 448 N.W.2d 415, 419 (N.D.1989). We do not believe that Richmond has raised an issue of material fact which could in any way "taint" the evidence of the "pour patterns."

Another important fact relied upon by those instigating the prosecution against Richmond was the fact that Richmond had contacted the insurance carrier covering the mobile home. Richmond raised no issue of fact regarding whether or not he was in contact with the insurance carrier. He apparently does not dispute this fact. Rather, his argument is that he didn't sign the proof of loss form and that the defendants were aware of this fact.

Richmond also argues that he wasn't the insured and couldn't make a claim, notwithstanding he had a vendor's interest in a contract for deed relating to the property.

---

**8.** The firefighters arrived at the scene within approximately three minutes and "they found the entry was totally involved in flames."

**9.** The relevant part of Marie Englehard's affidavit follows:

"At about 3 PM, on the afternoon of Thursday, December 10, 1987, I became aware of a fire in the entryshed of the mobile home located at 1121 Skyway Park Village, and this mobile home is located just next to mine, on the West side. I became aware of this fire when the man who I had seen working about the mobile home, and who I now know as Donald Richmond, came to my front door and asked me to call the fire department. Even as he spoke to me, I could see smoke blowing across the roof of the mobile home. I thought the fire was a chimney fire and that is how I reported it to the fire department.

"After talking to the fire department, I went outside to look at the fire, and then I found out that it wasn't a chimney fire. The entryshed was on fire. The heat was intense and windows were breaking. The front window broke and I looked into the mobile home interior, the front room and the dining room. I could look across to the doorway that led from the entryshed into the mobile home. Flames were entering the mobile home thru the doorway and were rolling across the ceiling and down the walls. Pieces of burning ceiling were falling to the floor. There was no fire raging on the floor in the mobile home. If there was any burning to the floor inside the mobile home, it must have been caused by the falling debris.

\*    \*    \*    \*    \*

"When I phoned in the fire, I gave my name and address, and I thought somebody from the police or fire department would question me, but no one has ever inquired."

Thus, Richmond's argument is apparently that, although he had contacted the insurance carrier, a reasonably cautious and prudent person, as the proof of loss form was unsigned, would have discounted the significance of his contacting the insurance carrier. We do not agree. We first note that a person need not actually sign a proof of loss claim to be guilty of arson under section 12.1–21–01, N.D.C.C.[10] Furthermore, the issue is not whether or not Richmond in fact had a financial interest in filing a claim, but rather whether or not it was reasonable to believe he had. We recognize that a criminal investigation may not end upon the filing of charges, and that it may be ongoing. Thus, the fact that Haskell later had the charges against Richmond dismissed upon further consideration of the facts because he didn't feel he could *prove* one of the statutory elements is of little relevance to the issue of whether probable cause existed at the time the arson charge was initiated.

Additional facts relied upon by those instigating the prosecution against Richmond largely go unchallenged. Richmond submitted no competent evidence suggesting that he was not the only one at the mobile home at the time of the fire, or more specifically, that the defendants knew or should

have known of the presence of other people.[11] Richmond does not dispute the fact that he was present at the commencement of the fire. Rather, he asserts that he was in the process of making repairs on the mobile home when the fire started. Richmond has submitted no competent evidence questioning the validity and accuracy of engineer Mathew Schwartz's report and opinion that the fire did not start by electrical means.

In summary, Richmond has raised no issues of material fact, the resolution of which would change the determination that probable cause existed to instigate the prosecution against him. Accordingly, summary judgment dismissing the malicious prosecution claim was appropriate.

Although we do not rely upon the doctrine of immunity in this case, we recognize that the defendants in this case may be entitled to various degrees of immunity. In *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974), we abrogated the doctrine of governmental immunity. However, in doing so, we recognized that some immunity was to remain "for certain acts which go to the essence of governing." *Id.* at 804. We thus adopted a discretionary function exception to governmental liability.[12] As we said in *Kitto:* "We do not

**10.** Section 12.1–21–01, N.D.C.C., reads:

"*12.1–21–01. Arson.* A person is guilty of arson, a class B felony, if he starts or maintains a fire or causes an explosion with intent to destroy an entire or any part of a building or inhabited structure of another or a vital public facility, or if he starts or maintains a fire or causes an explosion with intent to destroy or damage his own real or personal property for the purpose of collecting insurance for the loss."

**11.** In his brief, Richmond asserts that another person was present at the time of the fire. However, Richmond has not supported this assertion by affidavit or other comparable means. Thus, we can give such an assertion no credence.

**12.** Section 32–12.1–03, N.D.C.C., which was enacted subsequent to *Kitto,* reads in relevant part:

"3. A political subdivision is not liable for any claim based upon an act or omission of an employee of a political subdivision, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exer-

cise or performance, exercising due care, or the failure to exercise or perform a discretionary function or duty on the part of a political subdivision or its employees, whether or not the discretion involved be abused. Specifically, a political subdivision or an employee thereof is not liable for any claim which results from:

a. The decision to undertake or the refusal to undertake any legislative or quasi-legislative act, including the decision to adopt or the refusal to adopt any statute, charter, ordinance, order, regulation, resolution, or resolve.

b. The decision to undertake or the refusal to undertake any judicial or quasi-judicial act, including the decision to grant, to grant with conditions, to refuse to grant, or to revoke any license, permit, order, or other administrative approval or denial.

c. The decision to perform or the refusal to exercise or perform a discretionary function or duty, whether or not such discretion be abused and whether or not the statute, charter, ordinance, order, resolution, regulation, or resolve under which the discretionary

contemplate that the essential acts of governmental decision-making be the subject of judicial second-guessing or harassment by the actual or potential threat of litigation." *Id.* These acts include discretionary acts "traditionally deemed legislative or quasi-legislative, or judicial or quasi-judicial, in nature." *Id.*

In *Kitto,* we noted that the discretionary function exception under the Federal Tort Claims Act might provide a useful source of reference.[13] However, we said that we did not embrace the then existing "governmental" and "proprietary" functions distinction. Rather, we sought "a more narrow and a more rational ground for limiting liability." *Id.* at 805. In *Loran v. Iszler,* 373 N.W.2d 870, 873 (N.D.1985), we noted the Restatement (Second) of Torts, section 895D, comment f, provided a useful list of factors to consider in discerning whether an act was discretionary or not. Whatever reference or aid we use in determining whether or not an act is discretionary, it must be utilized with the ultimate purpose behind the discretionary function exception in mind; that is, the "essential

acts of governmental decision-making [should not] be the subject of judicial second-guessing." *Kitto,* 224 N.W.2d at 804.[14]

Counsel for Burleigh County argues that many of the duties involved in the prosecutorial function, including the decision whether to prosecute or not, involve discretionary acts. We have previously noted that a states attorney exercises much judgment and discretion in the charging process. *Hennebry v. Hoy,* 343 N.W.2d 87, 90–91 (N.D.1983); *see also Kittler v. Kelsch,* 56 N.D. 227, 216 N.W. 898 (1927). Given the large amount of independent judgment which goes into a decision as to whether or not probable cause exists, it is likely such acts are immune, but, for reasons earlier stated, we need not so decide in this case.

Haney and the City argue that most of what goes on in a criminal investigation involves the same exercise of discretion. However, not every act involving discretion within the scope of a person's employment involves a discretionary act. Furthermore, not every act within an investigation in-

---

function or duty is performed is valid or invalid.

d. The failure to provide or maintain sufficient personnel, equipment, or other fire protection facilities; or doing any fire extinguishment or fire prevention work, rescue, resuscitation, or first aid; or any other official acts within the scope of official duties; provided, however, this subsection does not provide immunity for damages resulting from acts of gross negligence.

Nothing contained in this subsection may be construed to limit the liability of a political subdivision or an employee thereof for a personal injury arising out of the execution of any legislative or quasi-legislative act, judicial or quasi-judicial act, or discretionary function."

**13.** The test for what falls under the discretionary function exception under the Federal Tort Claims Act has been somewhat refined since our decision in *Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974). *See Kennewick Irrigation District v. United States,* 880 F.2d 1018, 1022–1025 (9th Cir.1989) (discussing important United States Supreme Court decisions developing the contours of the discretionary function exception); *See also United States v. Gaubert,* — U.S. —, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Under this analysis, the first inquiry is " 'whether the action is a matter of choice for

the acting employee.... [T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.' " *Kennewick Irrigation District v. United States,* 880 F.2d at 1025 (citations omitted). "If the challenged conduct does involve an element of judgment, [the second] step is to 'determine whether that judgment is of the kind that the discretionary function exception was designed to shield.' " *Id.* "To be shielded, the judgment must be 'grounded in social, economic, and political policy.' " *Id.*

**14.** The Ninth Circuit, while discussing the reasons behind the discretionary function exception under the Federal Tort Claims Act, stated:

"This exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.' Grounded in separation of powers concerns, the discretionary function exception reflects Congress's 'wish[ ] to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' " (Citations omitted.)

*Kennewick Irrigation District v. United States,* 880 F.2d 1018, 1021–1022 (9th Cir.1989).

volves the exercise of discretion. Having found that probable cause existed to commence the prosecution against Richmond, we need not determine the extent to which acts of criminal investigators are immune under the discretionary function exception.

Lastly, it appears from Richmond's complaint that he also asserts a cause of action independently against the City and the County for improperly monitoring the actions of its employees. However, Richmond has asserted no wrong separate and apart from the allegedly improper charging process. Thus, as we have concluded that probable cause did, in fact, exist for instigating the prosecution against Richmond, we need go no further. *See Wigger v. McKee*, 809 P.2d 999, 1007 (Colo.App.1990).

For the aforementioned reasons, the judgment of the district court, granting the defendants' motion for summary judgment and dismissing Richmond's complaint with prejudice, is affirmed.

VANDE WALLE, LEVINE and MESCHKE, JJ., and ALLAN SCHMALENBERGER, District Judge, concur.

ALLAN SCHMALENBERGER, District Judge, sitting with the Court due to the resignation of the Honorable H.F. GIERKE III, as of November 20, 1991.